UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

Sonia M. Miranda,                                                  Case No.: 23-73373-AST
                                                                                 Chapter 13

                    Debtor(s).
-------------------------------------------------------------------x
Sonia M. Miranda,
                    Plaintiff(s),                             Adv Pro No. 23-8068-AST

      -against-

TLB 2019 LLC,

                    Defendant(s).
-------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT
<u>SETTING ASIDE A TAX LIEN SALE AS A FRAUDULENT TRANSFER</u>**

*Issues Before the Court and Summary of Ruling*

This dispute arises out of a tax lien sale of debtor Sonia M. Miranda's ("Debtor" or "Miranda") former residence following her failure to pay her property taxes. She commenced this proceeding to recover title to her former home, now held by Defendant TLB 2019 LLC ("TLB").

Pending before this Court are cross-motions for summary judgment filed by Miranda and TLB (the "Cross Motions"). Miranda's motion ("Miranda's Motion") seeks a determination that the transfer of her residence to TLB through a tax lien sale and a subsequent quiet title action was a fraudulent transfer under 11 U.S.C. §§ 522(h) and 548(a)(1)(B). TLB's motion ("TLB's Motion") seeks dismissal of the adversary proceeding on the grounds that: (1) Miranda's claims are barred by the doctrine of res judicata; (2) the transfer was not a fraudulent transfer under 11 U.S.C. 522(h) and 548(a)(1)(B); and (3) the action is barred by the doctrines of laches, unclean hands, and waiver and/or equitable estoppel. TLB also requests that this Court award it payment

for Miranda's use and occupancy of the residence after TLB acquired title. Alternatively, if the tax lien sale is set aside, TLB seeks repayment of the amount it paid to acquire the tax lien, plus interest and attorneys' fees.

For the reasons to follow, this Court will grant Miranda's Motion and deny TLB's Motion in part.

### *Jurisdiction*

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 157(b)(2)(E) and (H) and 1334(b), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by the Order dated December 5, 2012.

### *Factual and Procedural History[1]*

Miranda is an individual that currently resides and at all pertinent times herein resided at 300 Pennsylvania Avenue, Mineola, NY 11501 (the "Property"). TLB is a limited liability corporation formed and existing under the laws of the State of New York, having an address at 175 East Shore Road, Ste. 220, Great Neck, NY 11023.

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties and the public dockets in this case. Local Bankruptcy Rule 7056-1 requires that a party seeking summary judgment file a statement of facts the party alleges to be without a genuine dispute, and that each fact be supported by a citation to admissible evidence in the summary judgment record as required by Rule 56(c) of the Federal Rules. *See* FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1. Similarly, facts alleged by a party opposing summary judgment must be set out in a LBR 7056-1 statement supported by admissible testimonial or documentary evidence, and with citation to conflicting testimonial or documentary evidence as required by Rule 56(c); a party may not simply deny alleged material facts by a conclusory statement, or without citation to admissible evidence. This Court has not considered any fact alleged by either party which is not properly sourced or supported. This Court has also accepted as true properly supported facts alleged by either party which have not been properly refuted or challenged by Plaintiff or Defendant. *See* FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1; *Meredith Corp. v. Sesac, LLC*, 1 F. Supp. 3d 180, 186 n.3 (S.D.N.Y. 2014).

On December 6, 2000, Miranda and her now deceased husband acquired title to the Property. The deed to them was subsequently recorded in the Nassau County Clerk's Office on January 10, 2001.

Miranda failed to make property tax payments due to the Village of Mineola (the "Village") for the tax years of 2018 and 2019. This failure resulted in a tax lien being placed on the Property in the amount of $1,841.48 (the "Tax Lien"). On March 14, 2019, TLB purchased the Tax Lien at a public auction held by the Village.

On May 10, 2021, TLB served a "Notice to Redeem Taxes" on Miranda by certified mail (the "Notice"). The Notice states, *inter alia*:

> [I]n order to redeem [the Property], the total amount due must be paid to the collecting officer of the Village of Mineola within six (6) months from the date of service of this notice, and that in the event the failure to redeem within the time limited, the Treasurer of the Village of Mineola shall upon proper written application, execute and deliver to [TLB] a conveyance of the [Property].

Miranda did not pay her taxes due to the Village within the prescribed period of redemption. Accordingly, on February 7, 2022, the Treasurer of the Village executed and delivered a Treasurer's Deed conveying title to the Property to TLB (respectively, the "Treasurer's Deed" and the "Transfer").

The value of the Property was last assessed at $650,178.00 at the time of the Transfer. [Adv. Pro. Dkt. 1].[2]

On February 9, 2022, TLB commenced a quiet title action in New York State Supreme Court, Nassau County (the "State Court") seeking judgment declaring that it was the record holder and owner of the Property (the "Quiet Title Action"). Upon Miranda's default, the State Court

---

[2] TLB's answer admitted Miranda's statement "as to the assessed valuation, but denie[d] that the assessment is prima facie evidence of the house's fair market value." [Adv. Pro. Dkt. 6].

declared TLB to be the "record holder and owner" of the Property, free and clear of all liens, claims, and encumbrances, by judgment dated May 11, 2022 and entered on May 16, 2022.

TLB subsequently commenced a holdover action in Nassau County District Court (the "State District Court") to acquire possession of the Property and evict Miranda from the Property (the "Eviction Action").

On April 4, 2023, the State District Court held a trial on the Eviction Action.

On April 18, 2023, the State District Court ordered that a judgment of possession and a warrant of eviction be entered in favor of TLB against Miranda and others, with a stay of execution until August 15, 2023. The Judgment of Possession and Warrant of Execution were issued by the State District Court on May 1, 2023.

On an unspecified date after the stay of execution expired, TLB caused a 14-Day Eviction Notice to be served on Miranda.

On September 12, 2023, prior to being evicted, Miranda filed a petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") (case no. 23-73373-AST). [Dkt. 1].

On September 20, 2023, Miranda's counsel inquired of the Chapter 13 Trustee, Krista M. Preuss, Esq. (the "Chapter 13 Trustee"), whether her office would seek to avoid the Transfer and recover the Property. On September 21, 2023, the Chapter 13 Trustee's office stated that she would not pursue an avoidance action to recover the Property.

On October 11, 2023, Miranda commenced this adversary proceeding requesting that the Court enter judgment against TLB avoiding the Transfer under 11 U.S.C. §§ 522(h) and 548(a)(1)(B). [Adv. Pro. Dkt. 1].

On October 17, 2023, Miranda filed Schedule C, claiming a homestead exemption in the Property pursuant to New York Civil Practice Laws and Rules § 5206 in the amount of $179,975.00. [Dkt. 25].

On November 11, 2023, TLB filed an answer with a counterclaim for Miranda's use and occupancy of the residence after TLB took title or, in the case that Miranda is successful on its claim, reimbursement of its expenses incurred in buying the tax lien, acquiring title to the Property, and in enforcing its rights thereunder ("TLB's Counterclaim"). [Adv. Pro. Dkt. 5].

On February 13, 2024, TLB filed its Motion. [Adv. Pro. Dkt. 12].

On February 13, Miranda filed her Motion. [Adv. Pro. Dkt. 13].

On February 23, TLB filed opposition to Miranda's Motion. [Adv. Pro. Dkt. 14].

On February 23, Miranda filed opposition to TLB's Motion. [Adv. Pro. Dkt. 15].

On April 16, the Court held a hearing on the Cross Motions and directed the parties to file supplemental briefs on the issues of standing, federalism concerns, and unconstitutional takings by May 15. On May 17, the Court approved a stipulation between the parties extending the time to file the supplemental briefing to May 22. [Adv. Pro. Dkt. 22].

On May 22, TLB filed its supplemental brief. [Adv. Pro. 23].

On May 22, Miranda filed her supplemental brief. [Adv. Pro. Dkt. 25].

*Discussion*

*A. The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *See id.* at 322–23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001).

In considering cross-motions for summary judgment, the Court must evaluate the merits of each motion independently of the other. *See In re Zerbo*, 397 B.R. 642, 647 (Bankr. E.D.N.Y. 2008) (citing *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993); *In re Rodriguez,* 50 B.R. 576 (Bankr. E.D.N.Y. 1985) ("[C]ross-motions for summary judgment do not warrant the

court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed")). As part of the independent evaluation of cross-motions for summary judgment, the court must draw all reasonable inferences against the party whose motion is under consideration. *Coach, Inc. v. Peters,* 386 F.Supp.2d 495, 497 (S.D.N.Y. 2005); see also *Considine v. Schachter (In re Schachter),* No. 05–9404, 2007 WL 2238293 (Bankr. S.D.N.Y. Aug. 1, 2007).

### *B. Miranda has Standing to Bring a Fraudulent Transfer Action*

Section 522(h) of the Bankruptcy Code provides in pertinent part:

> The debtor may avoid a transfer of property of the debtor … to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).

Debtor did claim the Property as exempt under section 522(b). As discussed *infra*, the Transfer is avoidable by the Chapter 13 Trustee but the trustee indicated that her office would not pursue the avoidance action. As such, the only remaining question of Miranda's standing is whether "the debtor could have exempted such property under subsection (g)(1)." *See* 11 U.S.C. § 522(h).

Section 522(g)(1) sets forth, in relevant part, that the "debtor may exempt under subsection (b) of this section property that the trustee recovers . . . to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred . . . ." 11 U.S.C. § 522(g)(1). Under section 522(b), New York residents filing for bankruptcy protection are permitted to elect either New York State law exemptions or the federal

exemptions provided under the Bankruptcy Code. *See* 11 U.S.C. § 522(b); *see also* N.Y. DEBT. & CRED. LAW § 285. Miranda has opted for the New York State exemptions. [Dkt. 25].

Critical here is that New York State law provides that "no homestead exemption shall be exempt from taxation or from sale for non-payment of taxes or assessments." N.Y. C.P.L.R. 5206. CPLR Rule 5206, on its face, precludes a debtor from applying New York State exemptions where, as here, the homestead was subject to sale for nonpayment of taxes.

Section 522(g)(1), however, only requires that a debtor "*could have* exempted" the property under state or federal law. 11 U.S.C. § 522(g)(1) (emphasis added). Miranda could have exempted her interest in the Property under New York law or the Bankruptcy Code's federal exemptions from all of her creditors, whether she could exempt it from TLB or not. Further, she did in fact claim the New York exemption for the Property.

This Court has long required a debtor who seeks to void a judgment lien under section 522(f) to be entitled to and to have actually claimed an exemption in the property. *See In re Schneider*, No. 12-77005-ast, 2013 WL 5979756, at *1 (Bankr. E.D.N.Y. Nov. 8, 2013) ("[A] debtor must (1) actually claim a homestead exemption in his or her principal residence (2) in a dollar amount certain on Schedule C greater than $0.00, and (3) must plead in the § 522(f) motion the amount of the homestead exemption actually claimed . . . ."); *see also In re Coppola*, No. 12-70958-ast, 2013 WL 3794098 (Bankr. E.D.N.Y. July 18, 2013). Section 522(f)[3] uses similar language ("an exemption to which the debtor would have been entitled") to section 522(g)(1) ("could have exempted").

TLB also asserts that Miranda's ability to exempt her property under federal law should be

---

[3] 11 U.S.C. § 522(f)(1) ("Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b)….").

foreclosed by CPLR Rule 5206. This argument also fails. The Bankruptcy Clause of the U.S. Constitution gives Congress the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . ." U.S. CONST., art. 1, CL. 8. "Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are 'without effect.'" *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103-04 (2d Cir. 2010) (citing *Altria Group, Inc. v. Good,* 555 U.S. 70 (2008)).

TLB's application of section 5206 of the CPLR would require this Court to conclude that a state law may expressly limit the applicability of section 522(g)(1), an act of Congress on the "subject of Bankruptcies," to which the U.S. Constitution explicitly grants authority to Congress, or that a New York debtor claiming federal exemptions may avoid a tax lien sale that a New York debtor claiming state exemptions may not. This Court will not do so.[4]

As noted, Miranda could have claimed a federal exemption in the Property under sections 522(b)(2) and (d) whether she claimed the Property as her homestead or not, and thereby set aside the Transfer. Section 522(d)(1) of the federal exemptions allows a debtor to exempt the "aggregate interest, not to exceed $15,000 [1] in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . ." 11 U.S.C. § 522(d)(1). Section 522(d) does not require a debtor to have a homestead interest in real property to claim this federal exemption. *Donovan v. Maresca (In re Maresca)*, 982 F.3d 859, 864 (2d Cir. 2020) (allowing debtor to claim a homestead exemption on a property her "dependent son uses [] as a non-primary residence"); *In re Banfi*, No. 19-77029, 2021 WL 2407504, at *5 (Bankr. E.D.N.Y. June 9, 2021) ("Following the liberal construction of the phrase 'any property', [Debtor] should not be denied relief simply because [Debtor] does not reside at the Property."). CPLR Rule 5206 is expressly limited to

---

[4] This decision should not be read to declare New York CPLR section 5206 as unconstitutional as the Court does not need to reach the constitutionality of that provision.

homestead exemption claims, as it provides that "no homestead exemption shall be exempt from taxation or from sale for non-payment of taxes or assessments." Thus, TLB's argument would lead to disparate results for similarly situated New York resident debtors as to the very same real property where one claims state and the other federal exemptions.

Thus, Miranda has standing to bring her fraudulent transfer claims under sections 522(h) and 548(a)(1).

### *C. Section 548 Fraudulent Transfer*

"The Bankruptcy Code empowers debtors to set aside a transfer of property if (1) the debtor had an interest in property; (2) a transfer of that interest occurred on or within two years of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received 'less than a reasonably equivalent value in exchange for such transfer[.]'" *Gunsalus v Cnty. of Ont.*, 37 F.4th 859, 864 (2d Cir 2022) (citing 11 U.S.C. §§ 548(a), 522(h)).

In determining whether a transfer is for "reasonably equivalent value," courts consider "whether the debtor has received value that is substantially comparable to the worth of the transferred property." *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 548 (1994). This standard does not require a property to be transferred for market value; for example, a foreclosure sale "properly conducted under applicable state law, conclusively establishes reasonably equivalent value for purposes of § 548(a)." *In re Zerbo*, 397 B.R. 642, 653 (Bankr. E.D.N.Y. 2008); *see also BFP*, 511 U.S. at 538-39.

In *BFP*, the subject property was sold via a judicial foreclosure sale resulting in a sale price of $433,000. 511 U.S. at 533-34. Months later, the debtor filed a bankruptcy petition under chapter 11 and filed a complaint seeking to avoid the transfer as fraudulent under section 548, claiming

the property was actually worth $725,000 at the time of the foreclosure sale. *Id.* at 534. The Supreme Court recognized that "[n]o one would pay as much to own [foreclosed] property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques." *Id.* at 538-39. The Court held that in the context of a foreclosure sale, the reasonably equivalent value under section 548(a)(2) is not the "'fair market value' or 'fair foreclosure price,'" but "the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *Id.* at 545.

Similarly, in *Zerbo*, the chapter 7 trustee sought to avoid a prepetition transfer of debtor's marital property to his former spouse as fraudulent pursuant to section 548(a). 397 B.R. at 645. There, the transfer was the result of a settlement agreement incorporated by reference into a state court judgment of divorce. *Id.* at 646. This Court held that "absent extrinsic fraud or collusion among the divorcing parties, the division of marital assets which is agreed to by the parties, and is contemporaneously or subsequently approved by a matrimonial court, and incorporated into a divorce decree, conclusively establishes reasonably equivalent value." *Id.* at 654.

Here, there was no judicial oversight for the Tax Deed or the Transfer. Although TLB did file the Quiet Title Action, that only sought to declare the Tax Deed and Transfer were undertaken in accordance with the administrative tax procedures. Based exclusively on mechanically applied administrative requirements, TLB, a private party, was granted title to a Property worth an estimated $650,178.00 for the price of a $1,841.48 Tax Lien. The State Court Action only required the State Court to consider the validity of the Treasurer's Deed, and not the fairness of the value Miranda received. The State Court declared TLB by default judgment to be the "record holder and owner" of the Property, free and clear of all liens, claims, and encumbrances. Again, the State

Court was not asked to, nor did it, declare that the Transfer accorded fair value or reasonably equivalent consideration to Miranda.

This Court is not seeking to minimize the enforceability of a state court default judgment, nor reward Miranda for her multiple inactions. But this tax deed transfer was an administrative act without judicial oversight. Miranda did not have the protections of market forces as did the debtor in *BFP*, nor the protections of judicial oversight as did the debtor in *Zerbo*.

Thus, Miranda received less than reasonably equivalent value for the Property as a matter of law. The only evidence in the summary judgment record demonstrates that her $650,000 house was transferred for nonpayment of a *de minimus* amount of taxes ($1,841.48).

Further, the Bankruptcy Code defines insolvent, in relevant part, as meaning that

(A) … financial condition such that the sum of such entity's debts are greater than all of such entity's property, at a fair valuation, exclusive of –
    (i) property transferred, concealed or removed with intent to hinder, delay or defraud such entity's creditors; and
    (ii) property that may be exempted from property of the estate under Section 522 of that title . . . .

11 U.S.C. § 101(32).

Here, there is no dispute that prior to the Transfer, Miranda had an interest in the Property; that the Transfer occurred within two years of the petition date; and that the Transfer left Miranda unable to pay her debts.

TLB argues in circular fashion that Miranda was not rendered insolvent by the Transfer within the meaning of section 101(32). As contingent claims are included within the insolvency calculation, TLB urges this Court to find that Miranda's scheduled cause of action for the instant fraudulent conveyance action, valued at $650,000.00, means the Transfer of Miranda's Property did not render Miranda insolvent. This argument must fail. If a transfer that is the subject of a fraudulent conveyance action rendered a debtor insolvent, the unwinding of that transfer would

then again render a debtor solvent. Following TLB's theory would mean that an avoidable transfer could never render a debtor insolvent under the meaning of sections 548(a) and 101(32) if recovering the property transferred or its value would render a debtor once again solvent.

Therefore, because Miranda had an interest in the property, the transfer occurred within two years of the bankruptcy petition, the transfer rendered Miranda insolvent, and Miranda did not receive reasonably equivalent value, the Transfer is a fraudulent transfer as defined by section 548(a). As such, the Transfer is avoidable as a matter of law.

### D. The Doctrines of Res Judicata, Laches, Unclean Hands, and Equitable Estoppel Do Not Bar Miranda's Section 548 Claim

TLB argues, *inter alia*, that Miranda's claim is barred by the doctrines of res judicata, laches, unclean hands, and/or equitable estoppel as Miranda could have brought her fraudulent transfer claims during the pendency of the Quiet Title Action or Holdover Action. TLB is incorrect.

Res judicata, or claim preclusion, "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 500 U.S. 405, 412 (2020). Courts must apply principles of res judicata of the state in which in the judgment was entered. *See Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 87 (2d Cir. 2000).

New York uses the transactional approach to res judicata, meaning parties are prevented "from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." In determining whether two claims involve the same transaction, New York courts look to whether the two claims are "related in time, space, origin, or motivation." Typically, principles of res judicata require that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."

*Falardo v. N.Y.C. Police Dep't*, 566 F. Supp. 2d 283, 285-86 (S.D.N.Y. 2008) (internal citations omitted).

The first issue, then, is what claims Miranda is bringing here, and whether those claims could have been asserted in the Quiet Title Action. First, Miranda is barred from challenging the Transfer as an unconstitutional taking of her equity in the Property. In *Tyler v. Hennepin Cty.*, a county sold a taxpayer's home valued at $40,000 to satisfy a $15,000 tax debt pursuant to state law. 598 U.S. 631, 634 (2023). The county then retained the $25,000 excess funds from the sale. *Id.* The taxpayer filed an action against the county alleging a Takings Clause violation as the county had "unconstitutionally retained the excess value of her home above her tax debt." *Id.* at 635. The district court granted the county's motion to dismiss for failure to state a claim, and the circuit court affirmed. *Id.* at 636. The Supreme Court reversed, holding that the taxpayer had "plausibly alleged a taking under the Fifth Amendment." *Id.* at 647. Miranda could have raised the unconstitutional takings claim in the underlying Quiet Title Action but failed to do so.

In the alternative, Miranda is barred from raising a constitutional challenge based on her failure to so do in the Eviction Action. New York Real Property Actions and Proceedings Law section 747(2) gives the parties 60 days from the entry of judgment of the holdover proceeding to initiate an action requiring the determination of title. *Hauqe v. Rob*, 920 N.Y.S.2d 895 (2d Dep't 2011); N.Y. RPAPL § 747(2). There is no indication that Miranda complied with section 747(2) after the Eviction Action by filing an action to challenge title based on an unconstitutional taking.

Here, although Miranda states a fraudulent transfer claim under sections 522(h) and 548(a)(1), TLB argues that Miranda could have brought her claims under NYDCL sections 273 or 274 in the Quiet Title Action, and as such is barred from doing so under Bankruptcy Code section 548. Again, TLB is incorrect.

Miranda could not have brought either of these state law claims in the Quiet Title Action as, "under New York law, to recover under the DCL and attack a transaction as being fraudulent, plaintiffs must first establish that they occupy the status of creditor." *ADM Assocs. v. Grease'n Go*, 905 F. Supp. 79, 90 (E.D.N.Y. 1995) (citing 30 N.Y.Jur.2d *Creditor's Rights and Remedies* § 338 (1983)). Because Miranda is not a creditor of herself, she did not have standing to assert a fraudulent transfer claim under New York State law.

Miranda does not have unclean hands and is not equitably estopped from bringing her section 548 claim. TLB rests both theories on a perceived delay in Miranda raising fraudulent transfer claims from the February 7, 2022 Transfer. However, Miranda's cause of action under section 548 did not accrue until the filing of her bankruptcy petition in September of 2023, and she filed this action within a month of her petition. As such, Miranda did not cause undue delay in filing this action.

The doctrine of laches is also inapplicable. "[L]aches cannot bar [a] claim . . . where the statute contains an express limitations period within which the action is timely." *In re Jemal*, 496 BR 697, 703 (Bankr. E.D.N.Y. 2013) (quoting *United States v. RePass,* 688 F.2d 154, 158 (2d Cir.1982)). The Bankruptcy Code sets forth express limitations periods for actions under section 548. First, section 548(a)(1) itself requires the transfer sought to be avoided must have been made within two years prior to the filing of the petition. 11 U.S.C. 548(a)(1). Second, section 546(a)(1) sets forth that a cause of action under section 548 may not be commenced after the later of two years after the order for relief, or one year after the election or appointment of the first trustee. 11 U.S.C. 546(a)(1). Miranda acted well within these time frames.

As such, the affirmative defenses raised by TLB are inapplicable as a matter of law.

*E. TLB's Additional Requests for Relief*

Finally, TLB's request that the Court award TLB payment for Miranda's use and occupancy of the residence after TLB took title must be denied as the Transfer has been avoided. TLB cannot be awarded use and occupancy for Miranda's use of the Property after TLB took title based on a fraudulent transfer.

However, TLB is entitled to satisfaction of the value of its Tax Lien, plus applicable interest. New York state law provides for 9% per annum post-judgment interest; that is an appropriate rate to be applied here, commencing from the date of the Transfer (February 7, 2022). That amount will be a secured claim under Miranda's chapter 13 plan, to be treated as any other secured claim would under, *inter alia*, section 1325(a)(5).[5]

### *Conclusion*

For the reasons set forth herein, Miranda is entitled to judgment as a matter of law. As such, it is hereby

**ORDERED,** that Miranda's Motion is granted; and it is further

**ORDERED,** that TLB's Motion is denied in part; and it is further

**ORDERED,** that the February 7, 2022 Transfer is avoidable as matter of law pursuant to 11 U.S.C. 522(h), 548; and it is further

**ORDERED,** that Miranda's chapter 13 plan must provide for full payment to TLB of $1,841.48 plus per annum interest at 9% from February 7, 2022 until finally paid in satisfaction of TLB's Tax Lien; and it is further

**ORDERED,** that pursuant to Federal Rules of Bankruptcy Procedure Rule 7070, TLB is divested of title in 300 Pennsylvania Avenue, Mineola, NY 11501; and it is further

---

[5] Nothing in this opinion precludes TLB from seeking attorney fees as otherwise allowable under Section 506.

**ORDERED,** that pursuant to Federal Rules of Bankruptcy Procedure Rule 7070, Miranda is vested with title in 300 Pennsylvania Avenue, Mineola, NY 11501, subject to TLB's lien and final payment thereof.

A judgment consistent herewith shall be issued.

Dated: January 17, 2025
      Central Islip, New York



_____
Alan S. Trust
Chief United States Bankruptcy Judge